IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**ASHA V. RANSON-DILLARD**,

      Plaintiff,

v.

**TECHNICAL COLLEGE SYSTEM OF GEORGIA**,

      Defendant.

Civil Action No. 7:20-CV-247 (HL)

## ORDER

*Pro se* Plaintiff Asha V. Ranson-Dillard's Amended Complaint asserts claims against Defendant Technical College System of Georgia under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint in Lieu of Answer, or in the alternative, Motion for More Definite Statement. (Doc. 21). For the following reasons, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's Amended Complaint.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a complaint with this Court on December 10, 2020, bringing claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973 against the Technical College System of Georgia and

Southern Regional Technical College. (Doc. 1). Plaintiff was employed in the student activities center at Southern Technical Regional College from 2006 until sometime in 2020. (Doc. 1 at ¶ 10, 11, 20, and 30). Plaintiff asserted she was subjected to a pattern of discriminatory conduct including failure to hire, termination of employment, failure to promote, failure to accommodate disability, unequal terms and conditions of employment, retaliation, and "hostile, unsafe, and unhealthy work environment." (Doc. 1 at p. 4).

On April 22, 2021, Defendants filed a Motion to Dismiss Plaintiff's ADEA and ADA claims based on Eleventh Amendment Immunity and moved to remove Southern Regional Technical College as a party. (Doc. 9). They further moved to dismiss all of Plaintiff's claims for failure to state a claim upon which relief could be granted. (Doc. 9, p. 10). Defendants alleged that Plaintiff's Complaint did not contain any factual matter and was simply a list of conclusory allegations and non-specific elements of her claims. (*Id.*).

On May 19, 2021, this Court dismissed Plaintiff's ADEA and ADA claims and terminated Southern Regional Technical College as a party. (Doc. 17). The Court permitted Plaintiff to amend her complaint to provide more information regarding the events leading up to her termination. The Court directed Plaintiff to explain what her employer did to discriminate against her and how she opposed her employer's actions, as well as to describe the circumstances of her termination. (*Id.* at p. 6). Plaintiff filed her Amended Complaint on June 8, 2021. Defendant Technical College System of Georgia now moves to dismiss Plaintiff's Amended

Complaint as an impermissible shotgun pleading or, alternatively, for an order directing Plaintiff to file a more definite statement of her case.

## II.   MOTION TO DISMISS STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept the facts alleged in the plaintiff's complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1272 n.1 (11th Cir. 1999); *see* Fed. R. Civ. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint need not contain detailed factual allegations, but it must provide "more than labels or conclusions." *Twombly*, 550 U.S. at 554. "Threadbare recitals" of a cause of action's elements, "supported by mere conclusory statements," are insufficient to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Defendant argues that Plaintiff's Amended Complaint should be dismissed as an impermissible shotgun pleading under the Federal Rules of Civil Procedure. (Doc. 21 at p.1). Defendant alleges that the Complaint falls into three of the four established categories of shotgun pleadings: (1) it incorporates preceding paragraphs into each count; (2) it largely consists of conclusory, vague, and irrelevant allegations; and (3) it fails to plead separate and discernable claims for relief. (Doc. 21 at p. 9). Should the Court decide not to grant this motion to dismiss,

Defendant asks that Plaintiff's Amended Complaint be struck, pursuant to Rule 12(e), and that Plaintiff be required to re-plead her allegations in conformity with pleading standards.

### A.    Shotgun Pleadings

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Johnson v. Georgia*, 661 Fed. App'x 578, 580 (11th Cir. 2016) (citation omitted). "'Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of [the Federal Rules of Civil Procedure]…Besides violating the rules, shotgun pleadings also waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (internal citations omitted). The Eleventh Circuit has shown "little tolerance" for shotgun pleadings, which generally fall into "four rough types or categories." *Barmapov*, 986 F.3d at 1324–25.

> The first is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate each cause of action or claim for relief into a different count. And the final type of shotgun pleading is a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* (internal citations omitted). "It only requires qualifying as one of these four types to be considered a shot gun pleading" that is subject to dismissal. *Cummings v. Mitchell*, No. CV 118-161, 2020 WL 6802032, at *3 (S.D. Ga. Nov. 19, 2020).

At the direction of the Court, Plaintiff filed an amended complaint on June 8, 2021. The Amended Complaint lists 142 factual allegations, many of which are conclusory and vague. Plaintiff re-pleads her claims for violations under Title VII and the Rehabilitation Act but does not specify which facts are related to which claims. Additionally, only a few paragraphs detail specific incidents, yet even those are conclusory. Plaintiff alleges that her employer "deliberately misclassified [her] position," that a maintenance director would not allow her to ride on a golf cart in one instance, and that another employee with significantly less experience was given almost an equivalent salary upon hiring. (Doc. 20-1 at ¶ 35, 40, 71). The other paragraphs overwhelmingly contain vague conclusory statements such as "[my degrees were] not even acknowledged by my employer," "there were never any opportunities for advancement for me because my employer repeatedly put white counterparts without experience in student life over me," and "[m]y employer displayed retaliation and discrimination because of personal reasons." (Doc. 20-1 at ¶ 34, 52, 62). Plaintiff claims she experienced retaliation and an escalating pattern of harassment without specific details.[1] Plaintiff also claims she was paid

---

[1] Plaintiff claims she was subjected to unspecified harassment, retaliation, discrimination and other unlawful acts in ¶¶ 20, 21, 24, 41, 45, 48, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 74, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 107, 110, 118, 123, 133, 134, 135, and 136.

less and generally treated differently from her white counterparts but does not identify specific individuals with equivalent jobs, similar education, or experience, who are receiving higher salaries.

Plaintiff asserts in Count I that she as a "black female with Christian values" was subjected to "unwelcome discrimination and various other discriminatory acts." (Doc. 20-1 at ¶ 144-45). In Count II, she asserts that she is an individual with physical or mental impairment and she was "met with adverse employment actions, discrimination, harassment, less favorable treatment, and increased scrutiny for being a person with disabilities." (Doc. 20-1 at ¶ 159). However, Plaintiff does not identify which factual allegations form the bases for her theories of liability. As noted above, Plaintiff claims she was subjected to harassment, retaliation, or discrimination in over thirty paragraphs in the complaint, but most do not specify whether that harassment was due to her race, her religion, her disability, or some combination of these. In short, Plaintiff's Amended Complaint constitutes a shotgun pleading, which is subject to dismissal.

### B.    Failure to State a Claim

The Court cannot simply dismiss Plaintiff's Amended Complaint. Before dismissing a complaint on shotgun pleading grounds, the Court first must explain how the pleading violates the shotgun pleading rule, which the Court has done, and then provide Plaintiff with at least one opportunity to re-plead the complaint. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). In the present case, the Court has already allowed Plaintiff to amend the Complaint once. Based

on the following analysis, even if the Court were to permit Plaintiff to amend a second time, such an amendment would be futile.

### i. Title VII

Plaintiff's Amended Complaint alleges claims of racial and religious discrimination resulting in a hostile work environment, a failure to promote, and termination from her position. "Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer 'to fail or refuse to hire or to discharge…or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Woods v. Lockheed Martin Corp.*, No. 1:18-CV-3501-SDG-CCB, 2019 WL 13078827 (N.D. Ga. Oct. 18, 2019). Although unclear, Plaintiff appears to assert both a retaliation and a discrimination claim under Title VII. (Doc. 20-1 at ¶¶ 143-50). The two claims are distinct under Title VII. *Burlington N. & Santa Fe Ry. Co. v. White*, 538 U.S. 53, 61 (2006) ("The language of the substantive [antidiscrimination] provision differs from the antiretaliation provision in important ways.").

In the present case, Plaintiff makes many conclusory statements that she was passed over for jobs, not given a pay raise, and was placed with multiple supervisors who had less experience than she.[2] She claims that other coworkers

---

[2] See Doc. 20-1 at ¶¶ 25, 27, 29, 30, 31, 32, 33, 34, 36, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 55, 56, 57, 61, 62, 65, 69, 71, 72, 73, 76, 77, 78, 79, 80, 96.

were consistently given more money, employees to work for them, promotions, and that she was not given the same accommodations as other people. (*Id.*). Plaintiff's Complaint does not give the Court enough information to tie the retaliatory behavior to her formal complaints to the college's management and the Equal Employment Opportunity Commission ("EEOC"). Additionally, Plaintiff's Complaint often meshes her claim of discrimination with her claim of retaliation.[3] However, the two are distinctly different claims with different legislative purposes.

In *White*, the Supreme Court stated

> The language of the substantive [antidiscrimination] provision differs from the antiretaliation provision in important ways…We normally presume that, where words differ as they differ here, "'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well. The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.

538 U.S. 53, 61–62 (2006) (internal citations and quotations omitted).

   *a. Retaliation*[4]

---

[3] Plaintiff also often merges her claims under the Rehabilitation Act with those she asserts under Title VII. The Court separates these claims out when possible because they have different statutory requirements.

[4] Although Plaintiff attempts to allege separate claims for retaliation under Title VII and the Rehabilitation Act, a thorough reading of her Amended Complaint shows that she does not allege separate facts or incidents. It appears that all of her filed grievances were related to both her race and her disability. Therefore, the Court finds it expedient to evaluate these claims together.

Title VII acts to protect employees from retaliation for protected practices. *Duncan v. Wesley Woods Senior Living, Inc.*, No. 1:17-CV-0898-MHC-JSA, 2017 WL 10785309 at *5 (N.D. Ga. June 13, 2017). Specifically, the statute provides

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment…because [the employee or applicant] has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter.

*Id.* (citing 42 U.S.C. § 2000e-3(a)). "To establish a prima facie case of retaliation, a plaintiff must show: '(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events.'" *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2010) *citing Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc).

In Plaintiff's Amended Complaint, she does not allege that she was wrongfully terminated or demoted based on her filed grievances. Plaintiff alleges generally that "[her] employer has deliberately and intentionally discriminated, retaliated, and cause[d] [her] to work in a continuous hostile and violent work environment." (Doc. 20-1 at ¶ 136). Plaintiff was terminated during a reduction in force during the COVID-19 pandemic. Plaintiff alleges that her colleague who was similarly situated was not terminated despite the fact that Plaintiff had more working years than this employee. (Doc. 20-1 at ¶138). Plaintiff states that an email

was sent to those who could not perform their jobs while students were not there but does not allege that her colleague was included in that group of people. (Doc. 20-1 at ¶ 139). She also alleges that her FMLA and Reasonable Accommodations requests were denied but does not allege that this was directly in response to her formal and informal complaints, nor does she allege that others who were similarly situated had their accommodations denied. (Doc. 20-1 at ¶ 141).[5]

Defendant argues that Plaintiff's retaliation claim fails because she has failed to allege sufficient facts in the Amended Complaint to state a plausible claim that she opposed any conduct that is made unlawful by Title VII. The Court agrees. None of Plaintiff's allegations in the Amended Complaint suggests that Plaintiff was penalized or terminated for engaging in any activity protected by Title VII. The allegations do not support that Plaintiff was retaliated against for filing grievances with the administration or with the EEOC. Nor do the allegations support that Plaintiff was retaliated against for conduct made illegal under Title VII. Plaintiff fails to allege any causal link between her engagement in protected behaviors and any adverse employment actions on the part of Defendant. Plaintiff's retaliation claims are therefore **DISMISSED** for failure to state a claim.

b. *Discrimination*

─────────────────────

[5] Plaintiff does allege that her employer attempted to terminate her during a term of absence and that she requested telework at that time. In March 2020, all employees were afforded the opportunity to telework in response to the closures caused by the COVID-19 pandemic. Plaintiff alleges this is a form of discrimination and retaliation in her Complaint. She does not allege that others were granted the opportunity to telework in January 2020, when she requested the accommodation.

As previously discussed, the anti-discrimination and anti-retaliation language and purposes of Title VII are different in both language and purpose. *White*, 548 U.S. at 61–62. The language of the anti-discrimination provision states:

> It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applications for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*Id.* (citing 42 U.S.C. § 2000e-2). "Supreme Court precedent holds that the complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss." *Woods*, 2019 WL 13078827 at *4 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). "Nevertheless, the Eleventh Circuit has since held that complaints alleging discrimination still must meet the plausibility standard of *Twombly* and *Iqbal*." *Woods*, 2019 WL 13078827 at *4.

"Plaintiff must allege sufficient non-conclusory factual matter to state a plausible claim for relief on each of her claims." *Woods*, 2019 WL 13078827 at *4. "While Plaintiff need not establish a *prima facie* case to survive Defendant's motion to dismiss, it is useful for guidance purposes to note the *prima facie* formulations that the courts have developed as to each of Plaintiff's claims." *Id.* (citation omitted). For claims of disparate treatment as to employment issues, a *prima facie* case establishes that "(1) Plaintiff was a member of a protected class; (2) Plaintiff

11

was subjected to an adverse employment action; (3) Plaintiff's employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) Plaintiff was qualified for her position." *Id.* at *5.

In the Amended Complaint, Plaintiff identifies one coworker who she alleges received better treatment at work, but it is not clear that this coworker held the same role or responsibilities as Plaintiff. (Doc. 20-1 at ¶ 73, 79, 80). Plaintiff alleges separately that she was prevented from completing her own purchase orders and that purchases made for black history month were canceled while a white coworker's purchases for Saint Patrick's Day were approved. (Doc. 20-1 at ¶ 94–95). Finally, Plaintiff generally alleges an environment of harassment, discrimination, and hostility from her co-workers which she alleges is based on her race and Christian values.[6] Many of Plaintiff's antidiscrimination claims overlap with her retaliation claims, but none alleges sufficient non-conclusory factual matter to plead her claim of discrimination under Title VII. Because Plaintiff's Amended Complaint fails to set forth plausible allegations of discrimination, those claims are **DISMISSED**.

c. *Hostile Work Environment*

---

[6] See Doc. 20-1 at ¶ 94, 97, 98, 99, 100, 105, 106, 112, 123, 124, 126, 127, 128–30.

Last, Plaintiff claims that she was subjected to a hostile work environment because of her race and religion.[7] "To prevail on a hostile work environment claim, a plaintiff must show that she was subjected to 'severe or pervasive' harassment that was 'motivated by' a protected characteristic under Title VII." *Moreland-Richardson* 2021 WL 4452523, at *9 *citing Tonkyro v. Sec'y, Dep't of Veterans Affairs*, 995 F.3d 828, 836–37 (11th Cir. 2021). "To state a prima facie case for a hostile-work-environment claim, a plaintiff must show that:

> (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Woods*, 2019 WL 13078827 at *5 (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

Plaintiff rehashes several conclusions about the hostile work environment in her Amended Complaint. In one section, she does state that "the treatment was so hostile that I had to request police escorts at the end of my shift…" and that she was exposed to actions including "yelling, slamming items in [her] face, throwing, and snatching items from out of [her] hands and not limited to the listed." (Doc. 20-

---

[7] Plaintiff's claims under Title VII do not separately address the hostile work environment claim. However, Plaintiff cites several factual allegations related to her hostile work environment, including in the Title VII claim, so the Court will address it as well. (Doc. 20-1 at ¶ 22, 24, 68, 94, 98, 112; 123, 124, 125, 126, 133,145).

1 at ¶ 68). However, nowhere in Plaintiff's Amended Complaint are there specific instances referencing this conduct or the specific coworkers engaged in the conduct. Further, there is not even an allegation in this one particular instance that any of this conduct was related to her race. Plaintiff alleges later that she sent an email detailing her intimidation to her supervisors, but the contents of that email are not documented in the Amended Complaint. (Doc. 20-1 at ¶ 98). This evidence is not sufficient to show that Plaintiff was subjected to severe or pervasive harassment in the workplace that was motivated by her race.

### ii. Rehabilitation Act

Plaintiff also alleges that she was discriminated and retaliated against under the Rehabilitation Act because she had a disability that caused her to be denied employment opportunities and was discriminated against in a hostile work environment. Like Plaintiff's Title VII claims, the claims under the Rehabilitation Act are largely conclusory and vague. The Court has identified those factual allegations that specifically address Plaintiff's disability and related conduct for purposes of this analysis.[8]

The Rehabilitation Act "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) citing *Mullins v. Cromwell*, 228 F.3d

---

[8] See Doc. 20-1 at ¶¶ 24-26, 39-41, 45, 63, 64, 66-70, 74, 75, 81-92, 116, 117, 119, 133, 134, 158-64.

1304, 1313 (11th Cir. 2000).[9] To establish a prima facie case of discrimination, an individual must show that "(1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as a result of his disability." The Act defines individual with a disability as an individual who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such impairment, or (3) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B).

In the present case, Plaintiff has bilateral carpal tunnel syndrome, a fact known to her employer because she filed the appropriate paperwork in 2012. (Doc. 20-1 at ¶ 133). Plaintiff has been employed in a variety of progressive positions in the student life department since June 1, 2006, and holds an MBA, which presumably qualifies her for the positions she has held. The Court will evaluate only whether Plaintiff has sufficiently pled the third element—that she was subject to unlawful discrimination because of her disability.

Plaintiff generally alleges that she experienced a hostile work environment and discrimination based on her disability. Plaintiff claims that the maintenance department directors have denied her the ability to use a golf cart and have made statements that if she can't lift more than 5 pounds, she should find another job. (Doc. 20-1 at ¶ 40-41). Plaintiff also alleges that her disability has been on file with the college since 2012 and 2015, and that the administration acknowledged they

_____

[9] The Act also applies to entities receiving federal funds, such as TCSG and its institutions. 29 U.S.C. § 701(c).

were aware of it in writing. (Doc. 20-1 at ¶ 64). Additionally, Plaintiff alleges that she was denied leave for FMLA despite another employee being approved to use personal leave. (Doc. 20-1 at ¶ 75). Finally, Plaintiff alleges that she was required to have a new doctor evaluate her for purposes of disability leave, and that the exam caused her significant pain and stress. (Doc. 20-1 at ¶ 81-87).

Plaintiff must present actual evidence to satisfy her burden because "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext." *Furcron*, 843 F.3d 1295 at 1313 (11th Cir. 2016). Plaintiff's Amended Complaint does not meet this burden. With the few specific allegations mentioned above, this Court cannot determine that there was discriminatory behavior on the part of the Defendant. Plaintiff does not explain the circumstances surrounding her denial of FMLA, and states in her Amended Complaint that the administration claimed they were following the law. (Doc. 20-1 at ¶ 91-92). Plaintiff also shows no reason that the extra doctors' exams were discriminatory. She concludes that her "employer had the worker's comp administration [] treat [her] differently and discriminate again[st] [her] regarding other areas not limited to exams," but offers no other facts for the Court to evaluate regarding that claim. The allegation that she was not allowed to use FMLA when another employee was allowed to use personal leave is inapposite as FMLA is governed by statute and personal leave is governed by employer policy. "This Court has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citation

and punctuation omitted). Plaintiff's factual allegations are insufficient to prove that her employer discriminated against her because of her disability. Therefore, Plaintiff's claims under the Rehabilitation Act are **DISMISSED**.

## CONCLUSION

"When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim. When the amended complaint still fails to cure the deficiency, the complaint may be subject to dismissal." *Johnson*, 661 Fed. App'x at 580 (citation omitted). Plaintiff was previously ordered by the Court to amend her pleading to comply with the Federal Rules of Civil Procedure, and this Court gave her direct instructions for complying. After reviewing Plaintiff's Amended Complaint, the Court finds that Plaintiff failed to follow the instructions. The Court believes further amendments would be futile as Plaintiff's factual allegations do not rise to the standard articulated under Title VII or the Rehabilitation Act. Therefore, Plaintiff's complaint is dismissed.

The Court **GRANTS** Defendant's Motion to Dismiss. (Doc. 21). Plaintiff's complaint is **DISMISSED**.

**SO ORDERED,** this 1st day of March 2022.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

erj